IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

GEORGE SARLAS,

    Plaintiff,

v.

ATMOS NATION, LLC,

    Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff George John Sarlas, by and through his undersigned counsel, pleads the following against defendant, Atmos Nation, LLC, and alleges as follows:

### The Parties

1. Plaintiff George John Sarlas is an individual residing at 6458 Cape Cod Court, Lisle, Illinois 60532.

2. On June 11, 2020, Sai Stephen Rose assigned U.S. Patent No. 10,779,573 ("the '573 Patent") (Ex. 1) to plaintiff Sarlas. Sarlas is the assignee and owns all right, title, and interest to the '573 Patent.

3. Atmos Nation, LLC is a Nevada limited liability company with its principal place of business listed as 15901 SW 29th Street, Suite 201, Miramar, FL, 33027, USA.

4. Atmos lists its registered agent for service of process as follows: VCORP SERVICES, LLC, 701 S. CARSON STREET, SUITE 200, Carson City, NV, 89701, USA.

5. Atmos is in the business of designing, marketing, and selling portable vaporizers, e-cigarettes, and their accessories throughout the United States and the world.

1

## Jurisdiction and Venue

6. This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq. Accordingly, this court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. The court has personal jurisdiction over Atmos because Atmos's principal place of business is in Florida. Atmos also manufactures products that have been and are used, offered for sale, sold, and purchased in Florida.

8. Under 28 U.S.C. § 1400(b), venue is proper in this judicial district because Atmos has its principal place of business in this district and therefore "resides" in this district.

## Background

9. Sarlas re-alleges and incorporates by reference paragraphs 1-8 of his complaint.

10. Sarlas' stepson, Sai Stephen Rose, is the inventor of the '573 Patent claims.

11. Rose built an atomizer called the "Saionara."

12. In February 2016, Rose began marketing the Saionara for sale. Within 90 days, on May 25, 2016, Rose filed a provisional patent application.

13. Rose filed a non-provisional application on May 26, 2017.

14. The '573 Patent issued on September 22, 2020.

15. On April 4, 2023, the U.S. Patent and Trademark Office granted Sarlas' petition for the benefit of a prior-filed provisional application and to restore the benefit of a provisional application.

16. To manufacture the Saionara, Rose contracted with a company located in Shenzhen, China, called Shenzhen Crossing. Rose's contact with Shenzhen Crossing is a gentleman named Paul Xing.

17. Rose provided Xing with the disclosure in the '573 Patent, and Xing and Shenzhen Crossing prepared computer-aided design ("CAD) files that embody the Saionara and the '573 Patent claims.

18. Xing and Shenzhen Crossing then used those CAD files to control the machine that manufactured the Saionara.

19. Xing and Shenzhen Crossing admitted that they manufacture Atmos' Greedy.

20. On information and belief, Xing and Shenzhen Crossing manufacture Atmos' Greedy on the same CNC machine using the same CAD files that Xing and Shenzhen Crossing use to manufacture the Saionara.

21. In 2017, Rose notified Atmos of the provisional patent application. Ex. 4.

22. On September 29, 2020, Rose notified Atmos that its product, Greedy, infringes the '573 Patent claims.

23. On September 6, 2023, Sarlas notified Atmos that its product, Greedy, infringes the '573 Patent claims.

## Claim for Relief

24. Sarlas re-alleges and incorporates by reference paragraphs 1-23 of his complaint.

25. The '573 Patent, entitled "Conjunctive airflow atomizer for concentrates," was duly and lawfully issued September 22, 2020. A true and correct copy of the '573 Patent is attached hereto as Exhibit 1.

26. The '573 Patent names Sai Stephen Rose as the inventor.

27. The '573 Patent has been in full force and effect since its issuance. Sarlas owns by assignment the entire right, title, and interest in and to the '573 Patent, including the right to seek damages for past, current, and future infringement.

28. Sarlas is informed and believes, and thereon alleges, that Atmos has infringed and, unless enjoined, will continue to infringe one or more claims of the '573 Patent in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, or selling within the United States, supplying or causing to be supplied in or from the United States, or importing into the United States, without authority or license, Greedy products (the "accused products").

29. For example, Atmos infringes claim 1 when Atmos sells the accused products.

30. Claim 1 provides as follows, "A conjunctive airflow atomizer for concentrates comprising: a mouthpiece drip tip; a reclaim safety cap; a replacement atomizer module; a conjunctive airflow base; an industry standard universal 510 threaded deck; wherein said mouthpiece drip tip comprises an O-ring groove to accept a fitted O-ring wherein said mouthpiece drip tip is inserted into said reclaim safety cap and is seated by said O-ring . . . ."

31. The accused products include a mouthpiece drip tip. The Greedy mouth drip tip is identical to the Saionara mouthpiece drip tip.

32. The accused products include a reclaim safety cap. The Greedy reclaim safety cap is identical to the Saionara reclaim safety cap.

33. The accused products include a replacement atomizer module. The Greedy replacement atomizer module is identical to the Saionara replacement atomizer module.

34. The accused products include a conjunctive airflow base. The Greedy conjunctive airflow base is identical to the Saionara conjunctive airflow base.

35. The accused products include an industry standard universal 510 threaded deck. The Greedy includes an industry standard universal 510 threaded deck.

36. Being identical to the Saionara's mouthpiece drip tip, the accused products include a mouthpiece drip tip that comprises an O-ring groove to accept a fitted O-ring.

37. Claim 1 continues, "wherein said reclaim safety cap comprises a plurality of interior concentric vent holes adjoining a recessed cup-like structure, wherein said reclaim safety cap is disposed on said conjunctive air flow base; wherein said conjunctive airflow base comprises three O-ring grooves to accept two upper O-rings and one lower O-ring; wherein said reclaim safety cap is seated on said conjunctive airflow base by the two upper O-rings, wherein an adjustable air ring is seated by said one lower O-ring; wherein said adjustable air ring is disposed on an end of the conjunctive airflow base by friction fit and is secured to said industry standard universal 510 threaded deck by friction fit . . . ."

38. When one disassembles the accused products, a top view discloses that the reclaim safety cap comprises a plurality of interior concentric vent holes and a recessed cap-like structure. Again, these features are identical in the Greedy and the Saionara—which stands to reason because Atmos has copied the preferred embodiment set forth in the '573 Patent.

39. When one disassembles the accused products, a side view discloses that the conjunctive airflow base comprises three O-ring grooves to accept two upper O-rings and one lower O-ring. The lower O-ring is under the adjustable air ring and allows for the ring to turn with mild pressure and stay in place once the desired airflow is set. Again, these features are identical in the Greedy and the Saionara—which stands to reason because Atmos has copied the preferred embodiment set forth in the '573 Patent.

40. When one disassembles the accused products, a side view discloses that the reclaim safety cap is seated on said conjunctive airflow base by the two upper O-rings. The side view further discloses the adjustable air ring is seated by said one lower O-ring. This third O-ring is located under the metal adjustable ring. The side view also discloses the reclaim safety cap. Again,

these features are identical in the Greedy and the Saionara—which stands to reason because Atmos has copied the preferred embodiment set forth in the '573 Patent.

41. When one disassembles the accused products, a side view discloses that the adjustable air ring is disposed on an end of the conjunctive airflow base by friction fit; this ring will turn to open or cover the exterior holes. The side view also discloses the adjustable air ring secured to the standard universal 510 threaded deck by friction fit as well. Again, these features are identical in the Greedy and the Saionara—which stands to reason because Atmos has copied the preferred embodiment set forth in the '573 Patent.

42. Claim 1 continues, "wherein said replacement atomizer module fits within said conjunctive airflow base; wherein the replacement atomizer module comprises: a ceramic heating chamber, a heating coil comprising welded wire leads, a heating rod disposed within said heating coil, an industry standard universal 510 male threaded connector, and a positive metal pin for conducting electricity; said positive metal pin sheathed by an insulator inserted in the center of said industry standard universal 510 male threaded connector; wherein said ceramic heating chamber comprises a round cup-like structure narrowed on two interior opposing sides, said ceramic heating chamber comprising a plurality of holes, said ceramic heating chamber being concentrically situated within said replacement atomizer module, wherein a safety ring is secured to an end of the replacement atomizer module; said safety ring comprising a threaded connection; wherein the conjunctive airflow base comprises two chambers with a plurality of exterior and interior holes . . . ."

43. The accused products are easily disassembled. When this is done, an observer—one of ordinary skill in the art—can see that the replacement atomizer module in the accused products fits within the conjunctive air flow base.

44. In addition, looking at a top view of the disassembled accused product, one sees the ceramic heating chamber, which includes a heating coil comprising welded wire leads and a heating rod disposed within the heating coil, which is clear. Furthermore, one sees the industry standard universal 510 male threaded connector and positive metal pin for conducting electricity. The positive metal pin is sheathed by an insulator inserted in the center of the standard universal 510 male threaded connector.

45. Continuing to examine the disassembled accused products, one sees that the safety ring is secured to an end of the replacement atomizer module and the ceramic heating chamber comprises a round cup-like structure narrowed on two interior opposing sides. Also, the safety ring in the accused products includes a threaded connection.

46. A top view of the disassembled accused product also reveals a plurality of interior and exterior holes.

47. Claim 1 concludes, "wherein said conjunctive airflow base comprises an interior industry standard universal 510 female threaded connection to accept said industry standard universal 510 male threaded connector of said replacement atomizer module; wherein said conjunctive airflow base is disposed by friction fit on to said industry standard universal 510 threaded deck."

48. Returning to the disassembled accused products, one sees that the conjunctive airflow base includes an interior industry standard universal female threaded connection and an industry standard universal male threaded connector of the replacement atomizer module. And the conjunctive airflow base is disposed by friction fit on the industry standard universal 510 threaded deck. This base can be removed with force at the visible seam.

49. Atmos has long had knowledge of the '573 Patent. For example, as set forth in paragraphs 21 through 23, in 2017, Atmos was aware of the provisional application to which the '573 Patent claims priority.

50. In the ensuing years, Rose and Sarlas demanded that Atmos take a license under the '573 Patent.

51. Sarlas is informed and believes, and thereon alleges, that Atmos actively, knowingly, and intentionally has induced infringement of the '573 Patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the above-described products with the knowledge and specific intent to encourage and facilitate infringing uses of such products by its customers both inside and outside the United States.

52. Sarlas is informed and believes, and thereon alleges, that Atmos has contributed to the infringement by its customers of the '573 Patent by, without authority, importing, selling and offering to sell within the United States materials and apparatuses for practicing the claimed invention of the '573 Patent both inside and outside the United States. The above-described products constitute a material part of the invention of the '573 Patent and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

53. As a result of Atmos' infringement of the '573 Patent, Sarlas has been damaged. Sarlas is entitled to recover for damages sustained as a result of Atmos' wrongful acts in an amount subject to proof at trial.

54. Sarlas is informed and believes, and thereon alleges, that the infringement of the '573 Patent by Atmos has been and continues to be willful. As noted above, in paragraphs 21-23, 48 and 49, Atmos has long had knowledge of the '573 Patent and its need for a license. Atmos

has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Sarlas' patent rights. Thus, Atmos' infringing actions have been and continue to be consciously wrongful and willful.

55. Based on the information alleged in this claim, Sarlas is informed and believes, and thereon alleges, that this is an exceptional case, which warrants an award of attorneys' fees to Sarlas pursuant to 35 U.S.C. § 285.

## **Prayer for Relief**

WHEREFORE, Sarlas prays for judgment against Atmos as follows:

A. That Atmos has infringed, and unless enjoined, will continue to infringe, the '573 Patent;

B. That Atmos has willfully infringed the '573 Patent;

C. That Atmos pay Sarlas damages adequate to compensate Sarlas for Atmos' infringement of the '573 Patent, together with interest and costs under 35 U.S.C. § 284;

D. That Atmos be ordered to pay prejudgment and postjudgment interest on the damages assessed;

E. That Atmos pay Sarlas enhanced damages pursuant to 35 U.S.C. § 284;

F. That Atmos be ordered to pay supplemental damages to Sarlas, including interest, with an accounting, as appropriate;

G. That Atmos be enjoined from infringing the '573 Patent, or if its infringement is not enjoined, that Atmos be ordered to pay ongoing royalties to Sarlas for any postjudgment infringement of the '573 Patent;

H. That this is an exceptional case under 35 U.S.C. § 285, and that Atmos pay Sarlas' attorneys' fees and costs in this action; and

I. That Sarlas be awarded such other and further relief as the court deems just and proper.

**Demand for a Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Sarlas hereby demands a trial by jury on all issues triable to a jury.


Date: March 21, 2024                               s/Irene Oria_____

                                                    Irene Oria, FBN 484570
Irene.Oria@fisherbroyles.com
FISHERBROYLES, LLP
1221 Brickell Ave., Suite 900
Miami, FL 33131
(786) 536-2838 (telephone)


Matthew M. Wawrzyn (IL ARDC#6276135)
*Pro hac vice application forthcoming*
Matthew.Wawrzyn@fisherbroyles.com
FISHERBROYLES, LLP
200 East Randolph Street, Suite 5100
Chicago, IL 60601
(312) 235-3120 (telephone)
(312) 233-0063 (facsimile)

*Attorneys for George John Sarlas*